```
           UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

**SIERRA CLUB and ANSTED HISTORIC**
**PRESERVATION COUNCIL INC.,**

      Plaintiffs,

v.                                              Civil Action No. 2:08-01363

**POWELLTON COAL COMPANY, LLC,**

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the parties' proposed consent decree, filed September 15, 2010.

## I.  Background

On November 24, 2008, plaintiffs instituted this action pursuant to the citizen-suit provision of section 505(a) (33 U.S.C. § 1365(a)) of the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act.  Plaintiffs allege generally that defendant has discharged pollutants into the waters of the United States, and continues to do so, in violation of section 301 of the Clean Water Act (33 U.S.C. § 1311). (Compl. ¶ 2).  The discharges are additionally alleged to violate the conditions and limitations of the National Pollutant Discharge Elimination System ("NPDES") permits issued to

defendant by the State of West Virginia.  (Id.).  Plaintiffs seek substantial civil penalties and a permanent injunction to halt the alleged illegal discharges.  (Id. ¶ 1).

On September 15, 2010, plaintiffs lodged a proposed consent decree pursuant to section 505(c) of the Clean Water Act. That section provides pertinently that

> [n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

33 U.S.C. § 1365(c)(3).  Consistent with the foregoing provision, plaintiffs sent a copy of the proposed consent decree to the United States Department of Justice on September 15, 2010. Forty-seven days later, on November 1, 2010, the United States notified the court that it has no objection to entry of the proposed consent decree.  Accordingly, the parties request that the court enter the decree and dismiss this matter.

## II.  Governing Standard

The United States Court of Appeals for the Fourth Circuit has observed that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." Szaller v. American Nat. Red Cross, 293 F.3d 148, 152 (4th Cir.

2

2002) (quoting Smyth v. Rivero, 282 F.3d 268, 279-80 (4th Cir. 2002)); see also Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland, 478 U.S. 501, 519 (1986); United States v. ITT Continental Baking Co., 420 U.S. 223, 237 n.10 (1975) (citation omitted); Alexander v. Britt, 89 F.3d 194, 199 (4th Cir. 1996).

The Fourth Circuit expanded upon this principle in Smyth, observing that a court is expected, when presented with a proposed consent decree, to scrutinize the accord and make certain findings prior to entry:

> Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court.  As Judge Rubin noted in United States v. Miami,
>
>> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should. . . examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.
>
> 664 F.2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful.

Smyth, 282 F.3d at 280.

The standards governing consideration of a proposed

consent decree are elucidated further by <u>United States v. North Carolina</u>, 180 F.3d 574, 581 (4th Cir. 1999):

> In considering whether to enter a proposed consent decree, a district court should [1] be guided by the general principle that settlements are encouraged. Nevertheless, a district court should not blindly accept the terms of a proposed settlement. See <u>Flinn v. FMC Corp.</u>, 528 F.2d 1169, 1173 (4th Cir.1975). Rather, before entering a consent decree the court must satisfy itself that [2] the agreement "is fair, adequate, and reasonable" and [3] "is not illegal, a product of collusion, or against the public interest." <u>United States v. Colorado</u>, 937 F.2d 505, 509 (10th Cir. 1991). In considering the fairness and adequacy of a proposed settlement, the court <u>must assess the strength of the plaintiff's case</u>. See <u>Flinn</u>, 528 F.2d at 1172-73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," <u>the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision</u>." Id. (internal quotation marks omitted). In particular, the "court should consider <u>the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement</u>." <u>Carson v. American Brands, Inc.</u>, 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, Circuit Judge, dissenting), adopted by <u>Carson v. American Brands, Inc.</u>, 654 F.2d 300, 301 (4th Cir. 1981) (en banc)(per curiam).

<u>Id.</u> at 581 (emphasis supplied).

### III.  Analysis

As noted in <u>North Carolina</u>, the court accepts the general proposition that settlements are encouraged.  The

consideration is especially apropos in this action, which appeared poised to consume a significant amount of time and expense by the parties, including the public fisc, along with a substantial redirection of judicial resources.

Moreover, an examination of the proposed consent decree suggests it is fair, adequate, and reasonable. Regarding injunctive relief related directly to the alleged Clean Water Act violations, defendant has first agreed to implement an Aluminum Treatment Action Plan designed to reduce and prevent illegal discharges of aluminum from its coal mining facilities. Defendant has further agreed to undertake effluent testing to evaluate the contribution of aluminum from two of its mining facilities; implement an effluent limit violation response program; hire a third-party consultant for the purpose of conducting an audit of treatment systems; and abide by certain reporting requirements. Finally, defendant agrees to provide compliance training to all of its employees and to hire or designate a full-time employee whose time will be dedicated to compliance with the Clean Water Act.

In addition to the foregoing injunctive relief, the proposed consent decree also requires defendant to deliver to the United States within 20 days a civil penalty in the amount of

$134,700, along with stipulated penalties for future violations of the terms of the proposed consent decree and overages relating to NPDES permits.  The decree also provides for a payment of $1,212,000 to the West Virginia University College of Law in order to fund a Supplemental Environmental Project ("SEP").  The proposed SEP would enable the West Virginia University College of Law to create a Land Use and Sustainable Development Law Clinic intended to provide transactional legal services to individuals, non-governmental organizations, local governments, and communities to address land use and conservation needs in the Gauley and New River Watersheds to protect water quality.

It is noteworthy that the parties did not reach agreement immediately.  Rather, an amicable resolution was achieved only after extensive litigation concerning the parties' dispositive motions.  For example, nearly six months after plaintiffs initiated this action, defendant filed a partial motion to dismiss, contending that the court lacked subject matter jurisdiction inasmuch as the West Virginia Department of Environmental Protection ("WVDEP") had commenced and was diligently prosecuting an administrative penalty action under state law.  By memorandum opinion and order dated August 18, 2009, the court rejected defendant's contention and denied its

motion, finding that West Virginia law, which does not provide for the assessment of administrative penalties absent the violator's consent, is not comparable to section 309(g) of the Clean Water Act. See Sierra Club v. Powellton Coal Co., LLC, 662 F. Supp. 2d 514 (S.D. W. Va. 2009). Similarly, upon completion of discovery, the parties each moved for summary judgment and submitted lengthy briefs and extensive evidence in support thereof. By memorandum opinion and order dated February 3, 2010, the court denied defendant's motion for summary judgment and partially granted plaintiffs' motion for summary judgment. See Sierra Club v. Powellton Coal Co., LLC, No. 2:08-1363 (S.D. W. Va. Feb. 3, 2010). In so ruling, the court rejected defendant's contentions that plaintiffs' civil suit usurped the WVDEP's role as primary enforcer of the Clean Water Act and that plaintiffs could not establish certain violations of the relevant WV/NPDES permits. The court is thus satisfied that both sides were aggressively litigating the case up to the point they sought to suspend the scheduling order pending further settlement discussions.

Based upon the foregoing, the court finds that the proposed consent decree is fair, adequate, and reasonable. The court further finds that the accord is neither illegal nor the

7

product of collusion and that it serves the public interest.  In view of these findings, and inasmuch as no person has opposed entry of the consent decree, the court ORDERS as follows:

1. That the proposed consent decree be, and it hereby is, entered with the court's approval this same date; and

2. That this action be, and it hereby is, dismissed and stricken from the docket, with the court retaining jurisdiction pursuant to Article XVI of the consent decree and any other provision therein contemplating the potential for future action by the court.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED: November 18, 2010

_____
John T. Copenhaver, Jr.
United States District Judge